IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTEHRN DISTRICT OF ALABAMA
SOUTEHRN DIVISION

| | |
|---|---|
| TRUBRIDGE, INC., | ) |
| | ) Case No. |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) COMPLAINT |
| LASALLE PARISH HOSPITAL SERVICE | ) (JURY TRIAL DEMANDED) |
| DISTRICT NO. 1, d.b.a. HARDTNER | ) |
| MEDICAL CENTER, | ) |
| | ) |
| Defendant. | ) |
| | ) |

# COMPLAINT

## PARTIES

1. Plaintiff TruBridge, Inc. ("TruBridge"), successor by merger and name change to Evident, LLC, is a Delaware corporation with its principal place of business in Mobile, Alabama.[1]

2. Defendant LaSalle Parish Hospital Service District NO.1, d.b.a. Hardtner Medical Center ("Hardtner") is a body corporate under Louisiana law and is governed by the law applicable to corporations, with its principal place of business in Olla, Louisiana.[2]

---

[1] Evident, LLC was merged into Computer Programs & Systems, Inc. ("CPSI") and CPSI changed its name to TruBridge, Inc.

[2] Pursuant to LSA – R.S. § 46:1060, "any hospital service district thus created and named by any police jury or parish in the state shall constitute a body corporate in law with all the powers of a corporation, shall have perpetual existence, shall have the power and right to incur debts and contract obligations, to sue and be sued, and to do and perform any and all acts in its corporate capacity and its corporate name necessary and proper for the carrying out of the objects and purposes for which the hospital service district was created."; See also Op.Atty.Gen., No. 93-62, Sept. 14, 1993.

202381762.v3

**JURISDICTION AND VENUE**

3. This Court has subject-matter jurisdiction over this claim under 28 U.S.C. § 1332(b) because, as set forth below, the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and there is diversity of citizenship between TruBridge[3] and Hardtner.

4. This Court has personal jurisdiction over Hardtner because it "consented to the exercise of personal . . . jurisdiction" by this court for "any action brought to enforce or interpret this Agreement." (Ex. A, p. 7, ¶ 23).

5. Venue is proper in the Southern District of Alabama pursuant to 28 U.S.C. § 1391(a) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claims herein occurred, and because Hardtner agreed that "the exclusive and sole venue for any action brought to enforce or interpret this Agreement shall be the state and federal courts situated in Mobile County, Alabama." (Ex. A, p. 7, ¶ 23).

**FACTS**

6. TruBridge provides an electronic heath record solution and related support to rural and community hospitals.

7. Upon information and belief, Hardtner operates a general hospital and related medical facilities in or around Olla, Louisiana.

8. On or around June 2, 2021, Hardtner entered into the "Cloud Electronic Health Record (EHR) Service Agreement" with TruBridge (the "Agreement"). Therein, TruBridge agreed

---

[3] Evident, LLC was a Delaware limited liability company, and its principal place of business was Mobile, Alabama. Before the merger and name change, CPSI was the sole member of Evident, LLC. CPSI was a Delaware corporation, and its principal place of business was Mobile, Alabama. Thus, Evident, LLC was a Delaware and Alabama citizen for purposes of federal diversity jurisdiction as was CPSI.

202381762.v3

to provide Hardtner access to TruBridge's electronic health record system (the "System") and support of the System. (A true and accurate copy of the Agreement is attached hereto as **Ex. A**.) In return, subject to a twelve (12) month introductory period discount, Hardtner agreed to pay TruBridge $21,849.00 per month for the term of the Agreement, seven (7) years. (Ex. A, p. 1, ¶ 2, p. 10).

9. After the execution of the Agreement, TruBridge began implementing the System in accordance with the terms and conditions of the Agreement, and Hardtner went live with the System on November 3, 2021.

10. On or around August 30, 2022, Hardtner entered into a "Cloud EHR Service Agreement Service Addendum" with TruBridge (the "August Addendum"). (A true and accurate copy of the August Addendum is attached hereto as **Ex. B**.) Under the August Addendum, TruBridge agreed to provide Hardtner an interface. In return, Hardtner agreed to pay TruBridge a $113 per month service fee, for seven (7) years. (Ex. B, p. 1, p. 3).

11. On or around November 11, 2022, Hardtner entered into a second "Cloud EHR Service Agreement Service Addendum" with TruBridge (the "November Addendum") (A true and accurate copy of the November Addendum has been attached as **Ex. C**.). Under the November Addendum, TruBridge agreed to provide Hardtner additional interfaces. In return, Hardtner agreed to pay TruBridge a $383 per month service fee, for seven (7) years. (Ex. C, p. 1, p. 3). The August Addendum and November Addendum shall sometimes be collectively referred to as the "Service Addendums."

12. The Agreement, the Centriq Legacy Amendment, and the November Addendum were signed by Paul Matthews who currently serves as Hardtner's Chief Executive Officer, and the August Addendum was signed by Anna White, Hardtner's Chief Financial Officer.

13.     The initial seven-year term of the Agreement was from November 3, 2021, until November 3, 2028.  (Ex. A, p.1, ¶ 2).

14.     Under the Agreement and Service Addendums, following the expiration of the introduction period discount in December 2022, the total sum due to TruBridge each month is $22,345.00.

15.     At all times relevant, TruBridge provided Hardtner the services required of it under the Agreement and the Service Addendums.  For example, TruBridge provided Hardtner access to the System and the interfaces referenced in the Service Addendums.

16.     From approximately December 1, 2021, until June 5, 2024, Hardtner generally complied with the terms and conditions of the Agreement and the Service Addendums.  For example, Hardtner paid the service fees under the agreements.

17.     However, on June 5, 2024, Hardtner notified TruBridge it was terminating the Agreement and the Service Addendums.

18.     As an alternative, Hardtner claimed the Agreement is "null and void".  More specifically, despite agreeing to an Alabama choice of law provision, Hardtner now takes the position it is a political subdivision of the state of Louisiana and Louisiana governs the current dispute.  Further, because it is a political subdivision, Hardtner reasons the agreements are null and void because the agreements are "debts" under Louisiana law and the agreements were not pre-approved by the Louisiana Bond Commission.

19.     At no point prior to entering into the Agreement or Service Addendums or during the almost two years TruBridge provided Hardtner goods and services did Hardtner, or anyone on Hardtner's behalf, disclose to TruBridge that the Hardtner the agreements may be null and void.  Only after attempting to unilaterally terminate the agreements in breach of their terms, did

Hardtner first indicate it had failed to obtain requisite approval such that the Agreement and Service Addendums were null and void. (Ex. D, pg. 1, ¶ 2; Ex. E, pg. 1, ¶ 2).

20. At all times, TruBridge was ready, willing, and able to fulfill its obligations under the Agreement and the Service Addendums.

21. As a result of Hardtner's refusal to honor the Agreement and the Service Addendums, TruBridge has lost and will continue to lose the financial benefit of the Agreement and the Service Addendums, including but not limited to, the loss of the monthly service fees referenced in paragraphs 8, 11-12, and 15.

## COUNT I – BREACH OF CONTRACT

22. The allegations contained in the preceding Paragraphs are hereby realleged and incorporated herein.

23. TruBridge and Hardtner entered into the Agreement, the Service Addendums and the Centric Legacy Agreement.

24. At all times relevant, TruBridge performed under the Agreement and the Service Addendums and remains ready, willing, and able to perform its obligations under the agreements.

25. Hardtner breached the Agreements and the Service Addendums by failing to pay TruBridge's invoices and fulfill its obligations under the agreements for the full term of the agreements.

26. As a result, TruBridge has been and continues to be damaged by Hardtner's breach, and those damages are approximately $1,139,595.00 exclusive of interest, attorney's fees and costs.

## COUNT II – FRAUDULENT SUPPRESSION/ INDUCEMENT

27. The allegations contained in the preceding paragraphs are hereby realleged and incorporated herein.

28. If the Agreement and Service Addendums constitute a debt under Louisiana law, which TruBridge disputes, Hardtner suppressed a material fact regarding Hardtner's ability to enter into and intent to be bound by the Agreement and the Service Addendums.

29. Hardtner did not disclose it had any obligation to obtain approval from the Louisiana Bond Commission prior to entering into the Agreement and the Service Addendums or that its failure to do so would render the agreements null and void. Further, Hardtner failed to disclose its failure to obtain approval from the Louisiana Bond Commission to enter into the agreements.

30. Hardtner knew whether it was required to obtain such approval.

31. Due to the specific circumstances, Hardtner had a duty to disclose such obligation.

32. TruBridge would not have entered into the Agreement or the Service Addendums if it had known the agreements were null and void without approval from the Louisiana Bond Commission and Hardtner had not obtained such approval prior to signing the Agreement and the Service Addendums.

33. The suppressed facts, if true, were questionably material ones.

34. These acts and/or omissions constitute fraudulent suppression.

35. As a result of Hardtner's suppression of an existing, material fact, TruBridge has lost and continues to lose the financial benefit of the Agreement and Service Addendums, including but not limited to the monthly service fees referenced in paragraphs 8, 11-12, and 15.

## COUNT III – NEGLIGENT, WILFFUL OR INTENTIONAL MISREPRESENTATION

36. The allegations contained in the preceding paragraphs are hereby realleged and incorporated herein.

37. By executing them, Hardtner represented that it had the authority and ability to enter into the Agreement and the Service Addendums.

38. If the Agreement and the Service Addendums constitute a debt under Louisiana law, which TruBridge disputes, Hardtner negligently, willfully or intentionally misrepresented, by and through its representatives, it had the ability enter into and be bound by the terms of the Agreement and the Service Addendums for the full-service term of the agreements.

39. Whether the Agreement and the Service Addendums were authorized, valid and enforceable contracts between the parties is a material fact. TruBridge would not have entered into the Agreement and the Service Addendums with Hardtner if TruBridge had knowledge that Hardtner could unilaterally terminate or willfully breach them without recourse to recover.

40. TruBridge reasonably believed and justifiably relied on Hardtner's representations that it would be bound and intended to be bound by the terms of the Agreement and the Service Addendums.

41. TruBridge had no reason to know or suspect Hardtner was required to obtain prior approval from any regulatory authority or other governing body.

42. These acts and/or omissions constitute negligent, willful or intentional misrepresentations.

43. As a result of Hardtner's misrepresentations of a material fact, TruBridge has lost and continues to lose the financial benefit of the Agreement and the Service Addendums, including but not limited to the monthly service fees referenced in paragraphs 8, 11-12, and 15.

## **COUNT IV – PROMISSORY ESTOPPEL (*in the alternative*)**

44. The allegations contained in the proceeding Paragraphs are hereby realleged and incorporated herein.

45. If the Agreement and the Service Addendums constitute a debt under Louisiana law, which TruBridge disputes, Hardtner nonetheless clearly promised to accept TruBridge's goods and services and to pay TruBridge the monthly service fees for seven (7) years as set forth in paragraphs 8, 11-12, and 15.

46. By doing, Hardtner represented, by and through signatories Paul Matthews and Anna White, that it had the authority and ability to enter into the Agreement and the Service Addendums.

47. TruBridge relied, to its detriment, on said promises and entered into the Agreement and the Service Addendums and provided the services contemplated by the agreements.

48. Further, Hardtner accepted the services provided by TruBridge and made payments for them as required under the agreements for approximately two years and never indicated the agreements were null and void, or that Hardtner was required and failed to obtain approval from any requisite regulatory board or governing body.

49. Moreover, prior to entering into the Agreement and the Service Addendums, TruBridge provided Hardtner goods and services for approximately fifteen (15) years beginning on or about October 31, 2006, without issue, and reasonably believed Hardtner was free to contract with TruBridge without obtaining approval for any regulatory or governing bodies.

50. Hardtner knew or should have known that its promises and actions would reasonably induce TruBridge to execute the agreements and begin performance under the Agreement and Service Addendums.

51. Hardtner knew of or should have known that its promises and actions would lead TruBridge to believe the parties were bound by the terms and conditions of the Agreement and the Service Addendums for seven (7) years.

52. Hardtner's promises and actions did induce TruBridge to execute the Agreement and the Service Addendums and to perform its obligations under them.

53. These acts and/or omissions constitute promissory estoppel.

54. Based on the foregoing, it would be unjust not to permit TruBridge to enforce the promises Hardtner made to TruBridge under the terms and conditions of the Agreement and the Service Addendums even if the Agreement and the Service Addendums are null and void under Louisiana law.

### RELIEF REQUESTED

As a result of the foregoing, TruBridge demands judgment against Hardtner for compensatory damages, punitive damages, plus interest, attorneys' fees, costs, and such other and different relief to which it is entitled as a result of Hardtner's breach of the Agreement and the Service Addendums, and/or its suppression and/or misrepresentation. In the alternative, TruBridge demands compensatory damages, plus interest, attorneys' fees, costs, and such other and different relief to which it is entitled under TruBridge's promissory estoppel cause of action.

**PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS CAUSE.**

        Respectfully submitted,

        */s/ J. Walton Jackson*
        J. Walton Jackson (JACKJ1045)

        *Attorney for TruBridge, Inc.*

OF COUNSEL:

MAYNARD NEXSEN
RSA Battle House Tower
11 N. Water Street, Suite 24290
Mobile, Alabama 36602
T: (251) 432-0001
F: (251) 432-0007
wjackson@maynardnexsen.com

        */s/ Katie McCoy*
        Katie McCoy
        Pending *Pro Hac Vice* Admission

        *Attorney for TruBridge, Inc.*

OF COUNSEL:

MAYNARD NEXSEN
4141 Parklake Avenue, Suite 200
Raleigh, NC 27612
T: (919) 755-1800
F: (919) 653-0435
kmccoy@maynardnexsen.com

202381762.v3